**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| CHRISTOPHER L. SCRUGGS,<br><br>Plaintiff,<br><br>v.<br><br>TITIANNA MOODY, et al.,<br><br>Defendants. | CAUSE NO. 3:24-CV-200-PPS-JEM |

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds in this case with the following claims:

> (1) An Eighth Amendment claim for damages against Supervisor English, Kitchen Worker Moody, Kitchen Worker Perez, Lieutenant Crittendon, Lieutenant Rojo, Unit Team Manager Cornett, Major Cornett, Captain Lewis, Captain Farley, Sergeant Vazquez, Sergeant Miller, Sergeant Jones, Sergeant Brandon Williams, and Warden Galipeau in their individual capacities for acting with deliberate indifference to his dietary needs by providing him food that is either nutritionally inadequate or inedible from March 7, 2022, to March 4, 2024;
>
> (2) An Eighth Amendment claim for damages against Supervisor English, Kitchen Worker Moody, Kitchen Worker Perez, Lieutenant Crittendon, Lieutenant Rojo, Unit Team Manager Cornett, Major Cornett, Captain Lewis, Captain Farley, Sergeant Vazquez, Sergeant Miller, Sergeant Jones, Sergeant Brandon Williams, Warden Galipeau, Officer Thomas, Officer Smith, Officer Arnett, and Officer Pleasant for acting with deliberate indifference to his basic dietary needs by failing to provide him with food at appropriate intervals from July 7, 2023, to March 4, 2024;
>
> (3) A First Amendment claim for damages against Supervisor English, Kitchen Worker Moody, and Kitchen Worker Perez for retaliating against him for filing grievances and lawsuits by serving him less desirable food from March 7, 2022, to March 4, 2024;

> (4) An injunctive relief claim against Warden of the Westville Correctional Facility in his official capacity to provide him appropriate food at appropriate intervals as required by the First and Eighth Amendment.

ECF 34. The State defendants filed the pending motion for summary judgment, arguing that Scruggs did not exhaust administrative remedies with respect to his claims against them. ECF 96.

In the amended complaint, Scruggs alleges that, since March 7, 2022, the Aramark defendants have served him spoiled food, insufficient amounts of food, raw food, and food that has been rendered inedible due to too much salt. ECF 5, ECF 21, ECF 34. He has conveyed these food-related concerns to Lieutenant Crittendon, Lieutenant Rojo, Unit Team Manager Cornett, Major Cornett, Captain Lewis, Captain Farley, Sergeant Vazquez, Sergeant Miller, Sergeant Jones, Sergeant Brandon Miller, and Warden Galipeau, but they have not addressed these concerns. *Id.*

He also alleges that staff have failed to provide him with food at appropriate intervals from July 7, 2023, to March 4, 2024. *Id.* He alleges that, on most days, he was served breakfast sixteen to twenty-two hours after his last meal of the prior day and sometimes did not receive breakfast at all. *Id.* He has conveyed these concerns to the Aramark defendants, Lieutenant Crittendon, Lieutenant Rojo, Unit Team Manager Cornett, Major Cornett, Captain Lewis, Captain Farley, Sergeant Vazquez, Sergeant Miller, Sergeant Jones, Sergeant Brandon Miller, Warden Galipeau, Officer Thomas, Officer Smith, Officer Arnett, and Officer Pleasant, and they have not addressed them. *Id.*

Scruggs also attached numerous grievance documents that are relevant to the factual issues in this case, categorizing them into: (1) grievances submitted by him to which he received no response; (2) grievances submitted by him to which he received an initial response but no response on administrative appeal; and (3) grievances submitted by him to which he received responses at each level of the grievance process. ECF 5-1.

In an affidavit, Shannon Smith, grievance specialist at the Westville Correctional Facility, attests that a grievance process is available to inmates. ECF 96-1. The policy sets forth a three-step grievance process. ECF 96-2 at 9-14. First, an inmate must file a formal grievance with the grievance specialist. *Id.* Inmates must submit formal grievances within ten business days of the incident at issue. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may file an appeal with the warden or his designee. *Id.* Alternatively, if an inmate does not receive a response from the grievance specialist within twenty business days, the inmate may appeal to the warden. *Id.* Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.* Alternatively, if an inmate does not receive a response from the warden within ten business days, the inmate may appeal to the department grievance manager. *Id.*

According to the grievance specialist, the departmental records reflect that Scruggs properly completed the grievance process with respect to three grievances arguably relating to his claims. ECF 96-1. They also reflect that Scruggs submitted other

arguably related grievances but did not complete the administrative appeal process with respect to them. *Id.*

In response, Scruggs attests that he properly submitted each of the grievances attached as exhibits but did not receive responses to many of them. ECF 106 at 100-13. He explains that facility staff will not respond to his efforts to follow up on grievances and that he cannot appeal a grievance if he does not receive a response because a copy of the grievance response is required to appeal. *Id.* During the relevant timeframe, he ordinarily only had access to five grievance forms per week, and he has also been refused grievance forms. *Id.* In the past, he has also been designated by correctional staff as a grievance abuser and was temporarily restricted from filing grievances. *Id.* He further attests that he keeps handwritten copies of the grievances he submits. *Id.*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809

(7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The purpose of a grievance is to alert officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).

"[I]n line with the purpose of the PLRA—to give a prison an opportunity to correct a problem before litigation, prisoners must provide some identifying information about the accused individuals," *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly investigate and resolve grievances." *Id.* "Indeed, [the Seventh Circuit has] found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Id.*

To start, I find a genuine dispute of material fact between Scruggs' account of his efforts to complete the grievance process and the departmental records showing that

Scruggs did not complete the grievance process with respect to all but three of the grievances submitted by Scruggs as exhibits. While the State defendants contend that the grievance policy contains mechanisms that allow an inmate to advance the grievance process if they do not receive a timely response, Scruggs attests that these mechanisms do not operate in practice. The Seventh Circuit has repeatedly indicated that factual disputes pitting the absence of relevant grievance records in a correctional database against an inmate's attestation that he properly submitted grievances are appropriately resolved at evidentiary hearings. *See e.g., Blake v. Wexford Health Sources, Inc.*, 2026 WL 1122463, at *2 (7th Cir. Apr. 24, 2026); *Breyley v. Fuchs*, 156 F.4th 845, 848–49 (7th Cir. 2025); *Tatum v. Williams*, 2025 WL 1444418, at *2 (7th Cir. May 20, 2025); *Johnson v. Haskell*, 2025 WL 1000160, at *3 (7th Cir. Apr. 3, 2025); *Jackson v. Esser*, 105 F.4th 948, 958 (7th Cir. 2024); *Winston v. Clarke*, 746 F. App'x 561, 564 (7th Cir. 2018).

Next, the defendants argue that the grievances do not correspond to the claims and the defendants in this case. They state that, while Scruggs has asserted sweeping claims with respect to sixteen State defendants, the grievances do not name many of the State defendants, and, to the extent that they do, they reference isolated incidents rather than a sweeping pattern of inadequate or delayed food service. On this basis, they seek summary judgment on the entirety of Scruggs' claims. In response, Scruggs highlights the difficulties he faced in submitting grievances, including lack of responses from correctional officials, limited access to grievance forms, and the limitations imposed by the grievance abuser policy. He also notes that the grievance policy does not require

him to identify correctional staff by name and argues that his grievances adequately cover the entirety of his claims.

The defendants essentially argue that Scruggs' grievances do not suffice to exhaust the sweeping claims on which he was allowed to proceed. On this point, the case of *Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021), is instructive. In that case, the inmate filed a complaint asserting that jail staff failed to protect him from an attack by other inmates. *Id.* at 517. The district court found that the inmate did not properly exhaust administrative remedies due to a disconnect between the grievance and the complaint. *Id.* at 517-18. Specifically, the grievance focused correctional staff's failure to protect him before the assault at issue, while the complaint focused on the inadequate effort to protect him during this assault. *Id.* The Seventh Circuit affirmed the ruling on appeal, noting that the complaint focused on his repeated requests for protection prior to the assault incident and the defendants' power to change his housing assignments, while the grievance presented none of these concerns. *Id.* at 518.

The case of *Jackson v. Esser*, 105 F.4th 948 (7th Cir. 2024), is similarly instructive. In that case, the inmate asserted claims against seven defendants for lack of water access in his cell. *Id.* at 955. He submitted two grievances in which he asserted that a specific correctional lieutenant refused to turn on the water in his cell for five days. *Id.* at 960. The district court found that Jackson properly exhausted administrative remedies only with respect to the correctional lieutenant identified in the grievance. *Id.* The district court reasoned that the grievances did not indicate that any other staff member played a role in depriving the inmate of water and did not suggest the need to investigate a

broader far-reaching problem. *Id.* The Seventh Circuit affirmed the ruling on the basis that the grievance notified correctional staff only that a single correctional lieutenant refused to turn on the inmate's water and so "the allegations in his grievances are substantively distinct from the allegations in his federal complaint." *Id.*

The holdings of *Bower* and *Jackson* are easily stated, but difficult to apply in a case like this given the sheer number of arguably relevant grievances – 28 grievances in 24 months – and their relative complexity. Consider the three grievances for which proper exhaustion is undisputed. In the grievance dated August 14, 2023, Scruggs complained that, following a hunger strike, Captain Lewis and Major Cornett directed Aramark staff to prepare his meals in a certain manner to prevent peanut contamination and that Aramark staff had responded by wrapping a bug in his meal to show that "they could still tamper with his food." ECF 5-1 at 40. In a separate grievance submitted on the same date, Scruggs elaborated that a non-defendant officer refused to replace his contaminated meal. *Id.* at 45. He also stated that he told Sergeant Williams, Sergeant Vazquez, and "other staff" but that they refused to assist him. *Id.* He further represented that "these people keep making [him] go without food." *Id.*

Next, in a grievance dated August 20, 2023, Scruggs complained that he did not receive a breakfast tray and that a non-party correctional officer told him that the kitchen would send a tray from the production kitchen. *Id.* at 50-51. Then two non-party individuals brought him a tray prepared in the control unit kitchen. *Id.* He spoke to a non-party correctional sergeant about the problem, but he refused to help, which caused Scruggs to faint due to his diabetic condition. *Id.* Later, Sergeant Williams

became aware of Scruggs' circumstances, but Scruggs continued to receive food prepared at the control unit kitchen. *Id.* He asked that Aramark staff comply with the directives from Major Cornett, Captain Lewis, and Case Manager Cornett to prepare his meals at the production kitchen and that he has suffered peanut oil poisoning on three occasions. *Id.*

These three grievances alone contain several concerns. Some defendants are identified as assisting him with food service, albeit unsuccessfully; some defendants are squarely accused of misconduct that bears some relation to Scruggs' claims; many non-defendants are identified, and some wrongdoers are merely referenced but not identified, leaving it uncertain whether they are defendants or not. Further, these grievances, even if read in isolation, tend to suggest a broader pattern of inadequate food service. Moreover, the record is not limited to these three grievances. Though Scruggs' efforts to properly exhaust the other 21 grievances remain disputed, assessing whether and to what degree these grievances relate to the claims in this case is no less complicated.

What seems apparent is that dismissal of this case in its entirety due to a mismatch between the grievances and the claims would not be appropriate. It strikes me that the proper remedy for a partial mismatch is to narrow his claims by allowing him to proceed only on the portions of his claims that were properly exhausted as the district court did in *Jackson*. However, on this record, such narrowing is effectively impossible. For example, there are unidentified correctional staff members in numerous relevant grievances. With the absence of identification of these officers, I am unable to

determine precisely which defendants should remain and which defendants to dismiss. Narrowing the temporal scope of the claims presents a similarly daunting task given the sheer number of arguably relevant grievances and given that many of the grievances indicate that the issues are recurring or ongoing. Indeed, the volume of food-related grievances, by itself, would seem to suggest a broader issue, even if Scruggs had only mentioned an isolated incident in each grievance. Even further complicating this task is that Scruggs may not have had sufficient access to grievance forms or may have been reasonably concerned about the grievance abuser policy in light of the purported scope of the food service issues.

In sum, I cannot find that Scruggs' claims should be dismissed in their entirety, and the record does not allow for precise determinations as to the proper defendants or the proper scope of the claims. In other words, to put it plainly, the State defendants have not satisfied their burden in showing precisely which portions of the claims should be dismissed for failure to exhaust administrative remedies. Consequently, I deny the motion for summary judgment.

For these reasons, the court:

(1) GRANTS the motions to extend (ECF 91, ECF 105);

(2) DENIES the motion for summary judgment (ECF 96);

(3) ORDERS the State defendants to file a notice by November 20, 2026, as to whether they intend to withdraw the exhaustion defense or proceed with a hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008); and

(4) CAUTIONS the State defendants that, if they do not respond by this deadline, the affirmative defense of failure to exhaust administrative remedies will be forfeited.

SO ORDERED on October 21, 2026.

/s/Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT